211 So.2d 314

Maner J. SULLINS et al.

v.

CITY OF SHREVEPORT.

No. 49008.

June 4, 1968.

Ray A. Barlow, Michael R. Mangham, Hargrove, Guyton, Van Hook & Ramey, Shreveport, for plaintiffs-appellants.

J. N. Marcantel, J. Bennett Johnston, Jr., Shreveport, for defendant-appellee.

SUMMERS, Justice.

Maner J. Sullins instituted this suit against the City of Shreveport, claiming medical expenses he incurred and damages on behalf of his minor son, Joseph A. Sullins, arising from personal injuries suffered by the minor on November 5, 1964. The injuries arose when Joseph A. Sullins fell and lacerated his knee on a broken soft drink bottle while playing football in Princess Park, which was then owned and operated by the City of Shreveport.

Because Section 26 of Article XIX of the Louisiana Constitution, enacted in 1956,[1] barred any suit against any municipal corporation of the State in matters respecting the operation or maintenance of parks, prior to filing suit plaintiffs had obtained the passage of Senate Concurrent Resolution No. 5 of the 1967 Regular Session, granting the right to sue, as permitted by Section 26. Senate Concurrent Resolution No. 5, in

1. La.Const. Art. XIX, Sec. 26:
    "Section 26. The following named commissions, boards, bodies or municipal corporations are and shall be considered special agencies of the State of Louisiana:
     *      *      *      *      *
    "(4) Any municipal corporation, parish or subdivision of the State in matters respecting the operation or maintenance of parks and other recreational facilities or in connection with any rule or regulation applicable thereto.
     *      *      *      *      *

    "The consent of the State of Louisiana to suits or legal proceedings against any of the above listed special agencies, (however heretofore given) is hereby expressly withdrawn and no such suit or proceeding shall be permitted except as provided in this section. This withdrawal of consent to suits and legal proceedings shall apply not only to suits and legal proceedings filed in the future but also to any pending suits or legal procedure. There is expressly excepted from the foregoing, suits for the enforcement of contracts entered into by any

addition to granting the right to sue the City, denied the City the right to file a plea of prescription or peremption barring plaintiffs' claim. Immunity of the City from suit and liability was · specifically waived by the Resolution.

Notwithstanding the passage of the Resolution, when suit was filed by plaintiffs, the City filed a plea of prescription of one year, and it filed other pleadings whereby it attacked the constitutionality of Senate Concurrent Resolution No. 5. These attacks were based upon the proposition that the Resolution was neither a budgetary nor a fiscal matter and was passed in a budget session contrary to Article III, Section 8, of the Louisiana Constitution which restricted the session to budgetary or fiscal matters. Moreover, the argument was made that when a matter which is intended to become law, and which is neither budgetary nor fiscal, is introduced in a budget session it must be introduced with the consent of three-fourths of the elected members of each House. Neither of these requirements was met, the City contends, and the Resolution was, therefore, ultra vires, unconstitutional, null and void.

The trial court decreed Senate Concurrent Resolution No. 5 unconstitutional and plaintiffs appealed.

The issue presented is whether the Legislature followed the procedure prescribed by the Constitution in the passage of the Resolution.

Article III, Section 8, of the Louisiana Constitution, which governs the procedure of budgetary sessions, provides, in pertinent part, that:

"The Legislature shall meet in regular session at the seat of government on the second Monday in May, 1954 at twelve o'clock noon, and annually thereafter. All regular sessions convening in the even numbered years shall be general sessions and shall be limited to sixty days. No new matter intended to have the effect of law shall be introduced or received by either branch of the Legislature after midnight of the fifteenth day of its session, except in case of emergency, and then only by a yea and nay vote of two-thirds of the members elected. * *

"*All regular sessions convening in the odd numbered years shall be restricted to budgetary or fiscal matters;* however, no measures levying new taxes or increasing existing taxes shall be introduced or enacted. All regular sessions convening in the odd numbered years shall be limited to thirty days; provided, however that no new matter intended to have the effect of

---

of the special agencies or for the recovery of damages for the breach thereof. Additionally, the Legislature of Louisiana may, in individual cases, by appropriate act grant to any party showing just and

reasonable cause the right to sue any of these special agencies, in compliance with Section 35 of Article III of this Constitution.

    *     *     *     *     *

law shall be introduced or be received by either branch of the Legislature after midnight of the tenth day of its session. * * * *and any proposal to extend the budget session to matters other than those enumerated in this Paragraph* * * *shall require the consent of three-fourths of the elected members of each house."* (Emphasis added.)

Under these constitutional provisions, the resolution in question, adopted in 1967, an odd numbered year, must either be a budgetary or fiscal matter; or, if it does not fall in either category, it cannot be considered without the consent of three-fourths of the elected members of each house.

The 1967 Legislative Calendar discloses that Senate Concurrent Resolution No. 5 was read in full on May 9, 1967 and laid over under the rules. On May 10 it was again read in full and referred to the Committee on Affairs of the Senate. On May 15 the rules were suspended, and the Resolution was reported fiscal, the rules were again suspended, the Resolution was read in full and returned to the Calendar subject to call. On May 16 it was called from the Calendar, read in full, adopted and ordered to the House by a vote of 33 yeas and no nays.

The Resolution was received in the House on May 16, read in full and referred to the Committee on Judiciary, Section A, on May 16; it was reported favorably on May 23,

and on May 24 it was read in full and concurred in by a vote of 95 yeas and no nays.

Thereafter, on May 24 the Resolution was received in the Senate with notice of concurrence. On May 25 the Resolution was enrolled, signed in open session and without delay by the Lieutenant Governor and President of the Senate. That same day it was read in the House and signed by the Speaker of the House.

Waiver of the City's immunity from suit and from liability, the City contends, is neither a budgetary nor a fiscal matter, and, therefore the action of the Legislature in adopting a resolution purporting to grant these waivers in a budgetary session is beyond the power of the Legislature, for the action is not authorized by the Constitution.

█ Even if we assume that the subject matter of the Resolution is neither budgetary nor fiscal, we nevertheless find that the constitutionality of the Resolution should be upheld. The consent of more than three-fourths of the elected members of each House- as required by Article III, Section 8, was obtained to extend the budget session to the subject matter of the Resolution.

The City says, however, that the consent of three-fourths of the elected members of each House was not properly obtained. To support this argument counsel for the City point to the language of Article III, Sec-

tion 8, which declares that the session is "restricted" to budgetary or fiscal matters, except that "any proposal to extend" the budgetary session to other matters requires a three-fourths vote of each House. Thus, the argument proceeds, the Constitution contemplates a "proposal to extend" the session before any consideration can be given to the substantive measure itself. The statement is made in support of this premise that the Legislature, in both its rules and practice, requires a separate proposal to extend the session before a non-budgetary or nonfiscal bill may be introduced or considered. This was not done upon passage of the contested resolution.

We have been furnished with no authority to support the statement that the Legislature's rules provide as contended, when a resolution authorizing suit against a city is the subject matter involved. A perusal of the Legislative Calendar for 1967 indicates otherwise. But the argument invoking the rules is irrelevant here, for we have observed that in the passage of the Resolution the Legislature suspended its rules.

■ Nor do we find that Section 8 requires a three-fourths vote before a non-budgetary or nonfiscal matter can be considered. The restriction which the constitution placed upon the Legislature is a requirement that no non-budgetary or non-fiscal matter can be enacted unless it be by a vote of three-fourths of the elected members of each House. The Constitution does not require the three-fourths vote to consider a nonfiscal matter, it requires a three-fourths vote to enact a proposed non-fiscal matter. A resolution involving a non-fiscal matter is a "proposal to extend" the session to "matters other than" budgetary and fiscal.

Although the Constitution does provide in some instances that a fixed percentage of the legislative vote is required for the introduction of certain matters, when this requirement is made it is stated in clear terms. An example of this is found in the first paragraph of Section 8, which declares that emergency legislation may be introduced after the fifteenth day of a session, but only by a yea and nay vote of two-thirds of the members elected.

The Constitution requires consent of only three-fourths of the elected members of each House, however, 84.6% of the elected members of the Senate and 93.1% of the elected members of the House were in fact obtained to adopt the Resolution. No objection to the Resolution appears in the Legislative Calendar or in the Journals of the Senate and House, nor do they reflect that three-fourths of the elected members of each House did not consent to the extension of the budget session to consider and pass Resolution No. 5.

Under these circumstances, if a separate preliminary proposal were necessary to consider the substantive matter of the Resolu-

tion, we must presume that the proposal was voted upon and approved. For the Constitution does not require that action on the preliminary proposal be entered in the Journals or the Legislative Calendar. The Houses of the Legislature, therefore, may or may not enter this action in their discretion. Silence of the journals is not evidence that it was not done. Wall v. Close, 203 La. 345, 14 So.2d 19 (1943).

For the reasons assigned, the judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings not inconsistent with the views expressed herein.

SANDERS, J., concurs with written reasons.

SANDERS, Justice (concurring).

Article III, Section 8 of the State Constitution limits a budget session of the Legislature to "budgetary or fiscal matters." It also provides that "any proposal" to extend a budget session to non-fiscal matters requires the consent of three-fourths of the elected members of each house. Hence, such consent must be obtained before a non-fiscal matter can be considered.

Both the Senate and the House have established procedural rules implementing the foregoing constitutional limitation. Unless the author accompanies a bill with a resolution seeking the three-fourth's consent for introduction, the bill is referred to a

legislative committee for classification as fiscal or non-fiscal. The Legislature, of course, may overrule the committee action.

In the present case, the Senate Committee classified the contested measure as fiscal, and the Legislature accepted the classification. The measure authorizes a suit for monetary damages against the city of Shreveport. In a general sense, it pertains to the financial affairs of the City. I believe the Legislature's classification is reasonable and would not disturb it. Hence, I concur in the decree.