295 So.2d 440 (1974)
STATE of Louisiana
v.
Felton READO, Jr.
No. 54602.
Supreme Court of Louisiana.
May 23, 1974.
*441 William J. Guste, Jr., Atty., Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellant.
Robert L. Collings, Lake Charles, for defendant-appellee.
Harry F. Connick, Dist. Atty., William F. Wessel, Louise Korns, Asst. Dist. Atty., amicus curiae for the Parish of Orleans.
Robert G. Pugh, Shreveport, amicus curiae.
SUMMERS, Justice.
Felton Reado, Jr., was indicted by the grand jury of Calcasieu Parish, in that on or about September 30, 1973 he "Did unlawfully with the specific intent to kill or to inflict great bodily harm, murder one Gilbert Brown, in violation of LSA-R.S. 14:30.1(1)." The offense charged is second degree murder defined by the statute as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm...."[1]
Defense counsel filed a motion to quash the indictment. He alleges as a first basis therefor the unconstitutionality of Act 111 of 1973 upon which the prosecution is based. The Act amended Title 14 of the Revised Statutes of 1950 by adding thereto a new section designated as R.S. 14:30.1 to define the crime of second degree murder. The constitutional invalidity of the statute results, according to the allegations of the motion to quash, from the fact that the Act was passed in the 1973 session of the legislature, a fiscal session, without the necessary votes for its enactment, contrary to Article III, Section 8, of the Constitution.[2]
*442 The motion to quash also alleges that the Act fails to conform with the requirements of Sections 16, 17 and 18 of Article III of the Constitution.[3] The contention is that the body of the Act is broader than its title, its effect is made conditional upon the enactment of another act referred to by bill number only, and its enactment is by reference to other laws.
After a hearing the trial judge sustained the motion to quash and this appeal by the State followed.
The regular session of the Louisiana Legislature in 1973 was a fiscal session and as such the session was restricted to budgetary or fiscal matters by Article III, Section 8, of the Constitution. See Footnote 1. Act 111 of 1973, which enacted the second degree murder statute (La.R.S. 14:30.1(1)), is not a budgetary or fiscal matter. Constitutional limitations restrict consideration of non-budgetary and non-fiscal matters during fiscal sessions as follows:
"... Any proposal to extend the budget session to matters other than those enumerated in this paragraph (budgetary or fiscal matters), whether proposed by the governor or by the legislature, shall require the consent of three-fourths of the elected members of each house." (parentheses added).
The Rules of Order of the Louisiana House of Representatives provided, in keeping with the Constitution, that the vote of three-fourths of the elected members of both Houses is necessary to extend the budget session to any bill or resolution of a non-fiscal or non-budgetary character. When such a three-fourths vote is obtained, however, the rules provide that the bill or resolution shall be acted upon in due course "as in the case of other bills or resolutions."
According to stipulations in the record, in 1973 the House of Representatives consisted of 105 elected members, and 39 elected members composed the Senate. Act 111 and Act 109 (the latter being House Bill 37 upon which the effect of Act 111 was conditioned, see footnote 1) were both considered after adoption by a three-fourths vote of concurrent resolutions of both Houses of the Legislature to extend the session. The resolution extending the session for consideration of Act 111 was passed by a vote of 39 yeas and 0 nays in the Senate, and 79 yeas and 11 nays in the House. However, when, after consideration, the vote was taken for final passage, Act 111 received 34 yeas in the Senate and 0 nays; and 74 yeas and 10 nays in the House. The House vote was therefore 5 votes short of three-fourths.
The State contends that the enactment is in full compliance with the Constitution, *443 for after the three-fourths vote extending the session, it received a majority vote on its final passage as required by Article III, Section 24, providing that no bill shall become law "... unless, on its final passage, the vote be taken by yeas and nays, the names of the members voting for or against the same to be entered in the journal, and a majority of the members elected to each house be recorded thereon as voting in its favor...." (emphasis added.)
The defendant asserts, however, that a three-fourths vote is required by Article III, Section 8, both to extend the fiscal session to consider non-fiscal and non-budgetary matters and to enact any non-fiscal or non-budgetary matter into law at that session. To support its position the defense relies upon our decision in Sullins v. City of Shreveport, 252 La. 423, 211 So.2d 314 (1968). Particularly, the following language from the Sullins Case is cited to support the defendant's position:
"Nor do we find that Section 8 requires a three-fourths vote before a non-budgetary or non-fiscal matter can be considered. The restriction which the constitution places upon the Legislature is a requirement that no non-budgetary or non-fiscal matter can be enacted unless it be by a vote of three-fourths of the elected members of each house. The Constitution does not require the three-fourths vote to consider a non-fiscal matter, it requires three-fourths vote to enact a proposed non-fiscal matter."
Our decision in the instant case is that Act 111 of 1973 (La.R.S. 14:30.1(1)) is free of any constitutional infirmity although it did not receive a three-fourths vote on final passage. The procedure followed for its enactment was in full conformity with Article III, Sections 8 and 24, of the Constitution. It received a three-fourths vote to extend the session and a majority vote for final passage.
Taken out of context, the language quoted from the Sullins Case would seem to support defendant's contention. It should be noted, however, that the Sullins Case involved a resolution to authorize suit against the city of Shreveport. It was voted upon under conditions in which the rules of the legislature were suspended. The only vote reflected by the record in the Sullins Case, in view of the suspension of the rules, was a vote for final adoption. Since the vote was overwhelmingly in favor (33 yeas in the Senate and 95 yeas in the House) we found the resolution to be properly adopted.
In the Sullins Case, "No objection to the resolution appeared in the Legislative Calendar or in the Journals of the Senate and House, nor do they reflect that three-fourths of the elected members of each House did not consent to the extension of the budget session to consider and pass Resolution No. 5." In Sullins we found that "the Constitution does not require that action on the preliminary proposal be entered in the Journals of the Legislative Calendar ... Silence of the journals is not evidence that it was not done." In effect, there was no proof that there was not a three-fourths vote to extend the session.
Although we adhere to the result reached in the Sullins Case, the language relied upon by the defendant is unclear and misleading. Insofar as that language conflicts with the decision in the instant case it must be overruled.
Revision of the interpretation placed on the constitution in the Sullins Case by the conventional constitutional amendment process is virtually impossible as a practical matter. Article III, Section 8, will pass into limbo when the new Louisiana Constitution becomes effective on January 1, 1975. In the meantime this vital legislation is at issue.
It is, moreover, our prerogative and our duty to reexamine a decision when its reasoning or its understanding of the constitution is fairly called into question. *444 If the decision, its language or its reasoning is of doubtful validity it should not stand. This Court's authority, and judicial authority generally, must depend upon the force of the reasons which support its decisions.
As to the other grounds alleged in the motion to quash the indictment, no authority is cited to support these contentions, and we have not been able to find any decisions of this Court which would support defendant in this respect. Suffice it to say, we do not find the title of Act 111 narrower than its body, nor do we find it to be an enactment by reference to other legislation. The constitution does not prohibit the legislature from making an act effective, conditioned upon the passage of another law in the same session.
Other grounds urged in brief were not alleged in the motion to quash and will not be considered.
For the reasons assigned, the motion to quash is denied, and the case is remanded to the trial court to be proceeded with in accordance with law and in keeping with the reasons assigned herein.
NOTES
[1] Act 111 of 1973 provides:

"Section 1. Section 30.1 of Title 14 of the Louisiana Revised Statutes of 1950 is hereby enacted to read as follows:
"¶ 30.1 Second degree murder.
"Second degree murder is the killing of a human being:
"(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
"(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill.
"Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation or suspension of sentence for a period of twenty years.
"Section 2. This Act shall not apply to any crime committed before the effective date of this Act. Crimes committed before that time shall be governed by the law existing at the time the crime was committed.
"Section 3. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable.
"Section 4. All laws or parts of laws in conflict herewith are hereby repealed.
"Section 5. This Act shall take effect and become operative if, as and when Senate Bill No. 37, introduced by Mr. Windhorst at this session of the legislature becomes law."
[2] La.Const. Art. III, ¶ 8 provides:

"Section 8. The Legislature shall meet in regular session at the seat of government on the second Monday in May, 1954 at twelve o'clock noon, and annually thereafter. All regular sessions convening in the even numbered years shall be general sessions and shall be limited to sixty days. No new matter intended to have the effect of law shall be introduced or received by either branch of the Legislature after midnight of the fifteenth day of its session, except in case of emergency, and then only by a yea and nay vote of two-thirds of the members elected. Notwithstanding any contrary provision of this Constitution, and particularly the provisions of Article XXI, Section 1 thereof, no proposition for amending the constitution shall be considered unless introduced in the legislature within the first twenty-one days of its session.
"All regular sessions convening in the odd numbered years shall be restricted to budgetary or fiscal matters; however, no measures levying new taxes or increasing existing taxes shall be introduced or enacted. All regular sessions convening in the odd numbered years shall be limited to thirty days; provided, however that no new matter intended to have the effect of law shall be introduced or be received by either branch of the Legislature after midnight of the tenth day of its session. Any proposal to call or convene a special session of the legislature within thirty days prior to the convening of the budget session or within thirty days after its adjournment sine die and any proposal to extend the budget session to matters other than those enumerated in this Paragraph, whether proposed by the governor or by the legislature, shall require the consent of three-fourths of the elected members of each house.
"Should a vacancy occur in either House, the governor shall order an election to fill such vacancy for the remainder of the term."
[3] La.Const. Art. III, ¶¶ 16, 17 and 18 provide:

"Section 16. Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object.
"The Legislature may, however, by means of a single statute, enact or revise a system of laws of a general or public nature, such as the general statutes, or a codification of laws on the same general subject matter, or both. Such a statute shall be deemed to embrace but one object and its title need only refer to the general purpose and scope of the statute."
"Section 17. No law shall be revived or amended by reference to its title, but in such cases the act revived, or section as amended, shall be re-enacted and published at length."
"Section 18. The Legislature shall never adopt any system or code of laws by general reference to such system or code of laws; but in all cases shall recite at length the several provisions of the laws it may enact."